Tilghman C. J.
George Oyster, deceased, made an advancement to his son, Peter, by a gift of land, and afterwards died intestate, seised and possessed of real and personal estate. The land rose in value between the time of the gift and the death of the intestate. Peter claims a share of his father’s estate. The question is, whether the advancement is to be estimated, according to the value of the land at the time it was made, or at the time of the father’s death. The case depends upon the 9th section of the act, directing the descent of intestate’s “ real estates, and distribution of their “personal estates,” &c., passed the 19th April, 1794. By this act it is enacted, that in case any child shall have any estate by settlement of the intestate, or shall be advanced by the intestate in his lifetime, by portion or portions, equal to the share which shall be allotted to the other children, whether the same be by lands or personal estate, such person shall have no share of the estate, of which the intestate died seised or possessed; but in case the said advancement be not equal *425 to the share which will be due to the other children, then so _ much of the estate of the intestate to be distributed to the child to whom such advancement was made, as shall make the estates of all the children equal. I cannot find that the point now in dispute, has been decided by this court, or indeed by any other court in Pennsylvania; which is the more extraordinary, as acts similar to the act of April, 1794, so far as concerns this question, have been in force ever since the year 1705. Yet there must have been an understanding, which has generally prevailed, and been acquiesced in. The English statute of distributions contains a provision similar to that of our law (except that no regard is paid to an advancement in land to the eldest son), and the collatio bonorum of the civil law, from which the English borrowed their statute, is of the like nature. Yet neither in the English books, nor in the books of the civil law, is so much satisfaction to be found as might have been expected. In considering the question, therefore, I shall be governed principally by the words of our own law, and the established construction of some parts of it, which may throw light upon the rest. It is first to be observed, that the act makes no distinction between advancements in land and in personal estate. And there is no-doubt, that where the advancement is in personal estate, the value is to be estimated at the time of the gift. Many things (such as household furniture) are consumed or deteriorated in the use of them. Others (such as horses, cattle, &c.) are subject to accidental increase or decrease. Money is liable to fluctuation. In all these cases, the child who is advanced, accounts for the advance according to its value when he received it. The subsequent profit, or loss, is at his risk. Money put out at interest produces certain profit; yet the child who has received the interest, is not to bring it into the account. Why then should an advancement in land be valued on a different principle ? The amount of the advancement, is the price that the land would sell for at the time it is made. Suppose the gift is in money; that money may be immediately invested in land. Suppose it is in land; the land may be immediately converted into money ; yet in both cases the rule should be the same. The mode of valuation must not depend on the will of the party. Land, in this country, has always borne a stronger resemblance to personal estate, than in England. Its alienation is unrestricted. It *426 is subject to .debts of all kinds-. The transfer of it is so frequent, that it may almost be called a kind of merchandise. It is liable to great fluctuation in value too, for although in general its price has continued to rise,, yet that has not been uniformly the case, and where the estate consists of houses, it is subject to injury from fire and other contingencies. Establish what rule you will, cases- may be put, which will appear hard. Where the child has kept the land which he received in advancement, and both that and the other land of the father have risen greatly in value, it seems hard on the other children, that the whole should not be valued at the death of the father. Such a valuation would, in that case, undoubtedly produce the greatest equality in the family. But suppose on the other hand, that the advanced child had sold his land, the moment he received it, it would bear extremely hard on him to account for it according to the value at his father’s death.
There is another great difficulty too, attending a .valuation at any other time than that of the gift. In all parts of the state formerly, and in many parts now, land, in its natural state, is of little value. It is improved by the labour and expense of the proprietor. Now it is not contended, that the improvement produced by the labour and expense, is to be taken into the account. But it will be difficult to avoid it: And in the old settlements, where the estate has been improved, not by clearing woods and erecting buildings, but by the gradual melioration of the soil, the task of discrimination will be more difficult still. The counsel for the plaintiffs in error, relied much on a principle in Co. Litt. sect. 273. Where partition of land is to be made between parceners, one of whom has been advanced by a gift in frankmarriage, she must bring the land given in frankmarriage into hotchpot, and it is to be valued according- to its worth at the time of partition. This is a case sui generis. If the advancement had been by gift of land, in any other way than frankmarriage, it was not to be brought into hotchpot at all. If the same mode of valuation had been adopted with regard to settlements of land, under the statute of distributions, it would have been more to the purpose. But no authority has been shown to that effect. i In France, the civil law is the law of the country. In 4 Denizart, 90, (word Rapport) there is a case applicable to the subject. If a father is pos *427 sessed of an office, and gives it to his child, it is subject td collation, and is to be estimated at the price which it was worth at the time of the gift, although it afterwards rise in value; because the value might have been diminished instead of .increased, and the child is to take it at his risk for profit or loss. The principle of this case, seems better adapted to the nature of land in this state, than that which Lord Coke has established in partition between parceners. Upon the whole, it appears to me, that the rule which will be most convenient in practice, and most agreeable to the intent of the act of assembly and the general sense of the country, is, to estimate the advancement according to its value at the time it was made. I am therefore of opinion, that the judgment should be affirmed.
Ye ates J.
The question before us must be decided on the true meaning of the 9th section of our act of assembly of the 19th April, 1794. It much resembles, as to the point under consideration, the British statute of 22 and 23 Ch. II. c. 10. There are, however, some variances herein, between the two laws. The British statute saves the local customs of the city of London, the province of Tork, and other places, as to the doctrine of advancement. It does not extend to advancements made to the eldest son of lands either by deed or descent, although personalty given to him must be brought into hotchpot. And in England, what a child receives out of the mother’s estate, is not considered an advancement. Our act is uniform in it operation, and comprehends all the children alike, whether the estate be real or personal, or is derived from the father or mother.
The second member of the 9th section of our law runs thus : — “ In case any child shall have any estate, by settle- “ ment from the intestate, or shall have been advanced by “ the said intestate, in his.'or her lifetime, whether the said “ portion or advancement be in real or personal property, but “ not equal to the share which will be due to the other chil- “ dren or descendants, then so much of the surplusage of the “ said estate of the intestate to be distributed to such child, “ or children, as shall make the estate of all the said children “ or descendants to be equal.”
A practical rule of construction should be adopted which will govern all cases, so as to meet the intention of the legis *428 lature, with the greatest degree of justice to the family of the intestate, as far as the same is practicable under a general iaw. |nlt we m£ly jn vain expect to arrive at a complete equality between the children. A child advanced in the life-t-me (-^e parent will necessarily obtain more of the property of the ancestor than a child not advanced: but this cannot be avoided, unless we resort to a remedy worse than the disease. I consider the words, unot equal to the share” mentioned in the sentence, as. referring to the time of the settlement or advancement, and that real or personal property are placed in one common predicament. I cannot see on what possible grounds this court can discriminate between them. Our local situation greatly differs from that of old settled countries. In Europe, the value of lands is in a great degree stationary, and we do not there discover such rapid rises in the value of lands, as we frequently experience in the United States. In Great Britain, independently of new buildings, or other improvements, lands granted by a parent to a child, seldom vary in price at the death of the parent, unless from the occurrence of accidental circumstances, such as lying in the vicinity of a populous town, or in some place where there has been an increase of trade or manufactures. If, therefore, decisions could be found in the English books as to their mode of valuing advancements made of lands, I should not hold them to be perfectly applicable to our case.
The principle attempted to be established by the counsel of the plaintiffs in error, I view as incorrect, and think it cannot with any degree of justice be adopted in practice as a rule of decision. My ideas on the subject will be illustrated by particular cases.
If a father should give two of his sons farms of equal •value^ (say 1000 dollars each,) and that one son should in his father’s lifetime, sell his tract for 1000 dollars, its full' price, and the other son should retain his tract, which in the course of eighteen or twenty years, upon the death of the father, should become worth 10,000 or 15,000 dollars, without taking into view any improvements made thereon, will it be contended, that the advancement of the one son should be valued at 1000 dollars, and of the others, at ten or fifteen times that amount ? As to the son who sold, I presume there can be no doubt. Again. If a valuable house or store were granted to *429 a son, in a town where trade greatly flourished, and the course of trade should afterwards take a different direction, and be diverted elsewhere; or suppose the house or store should be consumed by fire, occasioned by lightning, after the execution of the deed by the father — should the son in either instance, bring into hotchpot the bare value of the ground estimated at the time of the distribution ? Once more. A father gives two of his sons 1000 dollars each. One makes tise of the cash in his usual business, the other invests it in land, which turns out a valuable purchase. Shall the latter be charged in account with the value of the estate secured by his own prudence ? We well know, that money twenty years ago would command more than double the amount of the necessaries of life, that a like sum would now obtain, and yet it is admitted, that in the case of a provision by money, the donee shall only bring the numerical sum -received into account. This shows unequivocally the impracticability of putting unadvanced children on a footing of perfect equality with those who have been advanced in the lifetime of their parents.
To my understanding it is evident, that an advancement in lands can only be estimated as it came from the hands of the parent, according to the real value of the property at that point of time. Its value cannot be enhanced or diminished by fortuitous circumstances, or the voluntary acts or omissions of the donee, although some seeming hardships may arise to the other childrep in particular cases.
I have bestowed some pains in my researches, but I have not been fortunate enough to meet with any case in the English books, which has ascertained what shall be deemed the relative value of lands advanced to a child. Yet I have found a modern case in equity as to personal property, which I feel myself at liberty to cite, not as an authority, but as the opinion of a learned chancellor, on the construction of the statute 22 and 23 Ch. II. c. 10. Lord Eldon, (Lord Kircudbright v. Lady Kircudbright, 8 Ves. jr. 51,) held, that an annuity was an advancement to be brought into hotchpot, viz : The value at the date of the grant; or if it has ceased, the payments received at the option of the child. In Beck-with v. Beckwith et al. in the Virginia Court of Appeals, (1 Wash. 225,) the court decided, that where a child had been advanced with money or negro slaves, he was not bound *430 to bring into hotchpot the increase of the one, or account for the interest of the other. “ For (says the president) as the “ donee must sustain the loss by accounting for the property “ at its value -when given, or by supporting and raising the “ negroes, so he is entitled to the increase of them. There “ does seem to be a hardship, where one son has been ad- “ vanced for many years, that he should account with an un- “ advanced child only for the principal: Yet no better rule “ than the above can be adopted.” I regard this authority as strong evidence of the principle which should decide the question before us.
Upon the whole, I concur in opinion with the president of the Court of Common Pleas, and give my voice that the judgment of that court be affirmed.
Eraceenridge J. differed from the rest of the court, but as his opinion has been mislaid, the reporter is unable to publish it.
Judgment affirmed.
(jjp The above opinions were not delivered* but were sent to the prothonotary of Fork county to be filed.